[No. D059141. Fourth Dist., Div. One. July 8, 2011.]

In re LEVI H. et al., Persons Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
JADE M. et al., Defendants and Appellants.

COUNSEL

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant Jade M.

Monica Vogelmann, under appointment by the Court of Appeal, for Defendant and Appellant Michael M.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Valerie N. Lankford, under appointment by the Court of Appeal, for Minors.

OPINION

McCONNELL, P. J.—Jade M., the mother of Levi H. and Maddox M. (the children), and her husband, Michael M., the father of Maddox, appeal the juvenile court's jurisdiction and disposition orders placing the children in out-of-home care based on Michael's physical abuse of Maddox. Michael contends the court erred by designating Andrew H. the presumed father of Levi based on a voluntary declaration of paternity he signed shortly after Levi's birth. (Fam. Code, §§ 7570 et seq., 7611.)[1] Michael asserts the court should have weighed the presumption of fatherhood in favor of Andrew against the presumption of fatherhood in favor of Michael based on his receiving Levi into his home and openly holding him out to be his son. (§ 7611, subd. (d).) Jade contends the court abused its discretion by removing the children from her custody on the ground she was unable or unwilling to protect them. We affirm the orders.

## FACTUAL AND PROCEDURAL BACKGROUND

Levi was born in 2008 to Jade and Andrew. The day after the birth, the parents signed a voluntary declaration of paternity. The document was witnessed by an employee of the Arrowhead Regional Medical Center, where the birth occurred.

Jade and Andrew married several months later, but they separated after less than three weeks and divorced in 2009. Jade reported that Andrew was violent toward her after he sustained a head injury in a car accident. He kidnapped, hit and strangled her and threatened to kill her family. Jade and

---

[1] Further undesignated statutory references are also to the Family Code.

her father obtained restraining orders against him. He was convicted of kidnapping and inflicting corporal injury on a spouse, and he was given 36 months of probation with the condition of 120 days in jail. He also has a previous criminal history.

Jade was awarded sole legal and physical custody of Levi, and Andrew was allowed supervised visits. According to Jade, Andrew stopped seeing Levi when he was four months old.

Jade and Michael married in 2010 and Maddox was born to them that fall. Approximately three months later, when Michael was home with the children and Jade was away, Maddox suffered a serious head injury requiring hospitalization. The San Diego County Health and Human Services Agency (the Agency) filed petitions on behalf of the children, which allege they were at substantial risk of harm because Michael nonaccidentally harmed Maddox, causing "left and right subdural hematomas with a subarachnoid component," and Jade did not believe Michael caused the injuries and was unable or unwilling to protect them.

Jade submitted a parentage questionnaire, which states Andrew is Levi's father and in 2008 the Riverside County Superior Court had entered a judgment on the matter. Michael also submitted a parentage questionnaire for Levi. It states that Levi lived with Michael beginning in June 2009, and he supported the child by providing food, clothing, diapers, gifts, medical insurance and transportation. The declaration does not state he told anyone he was Levi's father.

At the detention hearing, the court designated Michael as the presumed father of both children.[2] The court ordered the Agency to make a reasonable search for Andrew. The court placed the children in foster care. It granted Jade and Michael supervised visitation, and gave the Agency discretion to place the children with the maternal grandparents, authorize Jade to reside with the maternal grandparents, and lift the supervision requirement for her.

On January 10, 2011, the date scheduled for the jurisdiction and disposition hearing, Andrew made his first appearance. He asked that he be designated Levi's presumed father based on the voluntary declaration of paternity. The court granted Andrew presumed father status. Jade and Michael objected, and the court set a contested jurisdiction and disposition hearing and a contested hearing on paternity for Levi. The court ordered supervised visitation for

---

[2] The court's written order erroneously stated a judgment of paternity was entered for Michael. The court later corrected the order nunc pro tunc.

Andrew if it would not violate any restraining order. The court honored Jade's request for an order giving the Agency discretion to place the children with her in the family home on the condition that Michael not reside there.

At the contested hearing on February 9, 2011, Jade orally moved to rescind the voluntary declaration of Andrew's paternity on the ground she signed it under duress. Andrew objected on the grounds there was no noticed motion on the issue, and a motion to rescind was untimely. The court denied the motion. The court found as a legal matter that the voluntary declaration of paternity rebutted the presumption in favor of Michael, and Andrew is Levi's presumed father.

The jurisdiction and disposition portion of the hearing followed. Michael acknowledged he may have unintentionally harmed Maddox "when he picked him up and put him on his shoulder to change his diaper." Maddox's treating pediatrician, however, rejected that explanation. In her opinion it was highly likely the injuries were inflicted nonaccidentally.

The Agency's social worker, Shari Madeiros, testified she doubted Jade's ability to protect the children because Jade did not believe Michael could have intentionally harmed Maddox. The Agency's report states the "parents are currently living together in their house of origin" and "it appears that their intention at this time is to remain together." Madeiros testified she believed that Jade and Michael were still living together.

Madeiros recommended that the children remain with the maternal grandparents, with the Agency retaining the discretion to lift supervision and allow Jade to live with the maternal grandparents as long as Michael was not in the home. Jade admitted to spanking Levi over potty training issues, and Madeiros did not intend to exercise the discretion until she had participated in services for a period. Madeiros also recommended against Levi's placement with Andrew.

The court made true findings on the petitions, declared the children dependents of the juvenile court, and determined their placement with the parents would create a substantial risk of harm. The court continued placement of the children with the maternal grandparents, authorized supervised visitation, retained the Agency's discretionary powers discussed above, and ordered the parents to comply with reunification services.

## DISCUSSION

### I

*Voluntary Declaration of Paternity*

### A

■ Michael contends the court erred by finding Andrew's voluntary declaration of paternity rebutted Michael's presumed father status as to Levi.[3] The resolution of this issue depends solely on statutory interpretation and is subject to our independent review. (*In re Liam L.* (2000) 84 Cal.App.4th 739, 743 [101 Cal.Rptr.2d 13].) "Our primary aim in construing any law is to determine the legislative intent. [Citation.] In doing so we look first to the words of the statute, giving them their usual and ordinary meaning." (*Committee of Seven Thousand v. Superior Court* (1988) 45 Cal.3d 491, 501 [247 Cal.Rptr. 362, 754 P.2d 708].)

■ At the detention hearing, or as soon thereafter as practicable, the juvenile court is required to ask the mother to identify all presumed or alleged fathers. (Welf. & Inst. Code, § 361.5, subd. (a).) " 'A father's status is significant in dependency cases because it determines the extent to which the father may participate in the proceedings and the rights to which he is entitled. [Citation.] . . . Presumed father status entitles the father to appointed counsel, custody (absent a finding of detriment), and a reunification plan. [Citations.]' " (*In re Kobe A.* (2007) 146 Cal.App.4th 1113, 1120 [53 Cal.Rptr.3d 437].)

■ "A man is a presumed father if he meets the criteria of Family Code section 7611." (*In re Jason J.* (2009) 175 Cal.App.4th 922, 932 [96 Cal.Rptr.3d 625].) Under section 7611 a man is presumed to be a child's natural father if he "receives the child into his home and openly holds out the child as his natural child." (§ 7611, subd. (d).) The court relied on this criterion in initially designating Michael as Levi's presumed father.

A man is also a presumed father under section 7611 if he meets the conditions of section 7570 et seq. (§ 7611.) "In 1993, our Legislature enacted section 7570 et seq., providing for establishment of paternity by voluntary declaration. Section 7570, subdivision (b), declares there is a compelling state interest in establishing a simple system allowing for establishment of voluntary paternity, so that there will be a 'significant increase in paternity

---

[3] Jade and Michael join each other's arguments and the Agency raises no standing issue. The children's appointed appellate counsel agrees with the Agency's position on all issues.

establishment, an increase in the number of children who have greater access to child support and other benefits, and a significant decrease in the time and money required to establish paternity due to the removal of the need for a lengthy and expensive court process to determine and establish paternity . . . .' " (*In re Liam L., supra*, 84 Cal.App.4th at p. 743, fn. omitted.) The Legislature also found that "[k]nowledge of family medical history is often necessary for correct medical diagnosis and treatment," and "knowing one's father is important to a child's development." (§ 7570, subd. (a).)

Section 7571, subdivision (a), provides that before an unmarried woman leaves a hospital after giving birth, the person responsible for registering live births shall provide to the mother and to the man she identifies as the natural father a voluntary declaration of paternity and explanatory materials. Hospital staff is required to witness the parents' signatures on the document and to forward the declaration to the Department of Child Support Services (DCSS) within 20 days of its execution. (§ 7571, subd. (a).) "The explanatory materials are attached to the declaration form and must warn the parents that: (1) signing and filing the declaration establishes paternity; (2) legal rights and obligations of the parents and the child result from establishment of paternity; (3) the alleged father has the constitutional right to have the issue of paternity decided by a court; and (4) by signing the voluntary declaration of paternity, the father waives that constitutional right." (*In re Liam L., supra*, 84 Cal.App.4th at pp. 743–744; see § 7572, subd. (b).)

A voluntary declaration of paternity that has been filed with the DCSS "shall establish the paternity of a child and shall have the same force and effect as a judgment for paternity issued by a court of competent jurisdiction. The voluntary declaration of paternity shall be recognized as a basis for the establishment of an order for child custody, visitation, or child support." (§ 7573.)[4] The court relied on section 7570 et seq. in determining Andrew is Levi's presumed father. "Although more than one individual may fulfill the statutory criteria that give rise to a presumption of paternity, 'there can be only one presumed father.' " (*In re Jesusa V.* (2004) 32 Cal.4th 588, 603 [10 Cal.Rptr.3d 205, 85 P.3d 2].)

Michael asserts that Andrew's voluntary declaration of paternity is ineffective because it bears no proof it was filed with the DCSS. Section 7571, subdivision (a), however, provides that hospital staff "shall witness the signatures of parents signing a voluntary declaration of paternity and *shall forward the signed declaration to the Department of Child Support Services*

---

[4] A voluntary declaration of paternity may be rescinded or set aside under specified statutory circumstances and time guidelines, none of which Jade pursued. (See *Kevin Q. v. Lauren W.* (2009) 175 Cal.App.4th 1119, 1131–1132 [95 Cal.Rptr.3d 477] (*Kevin Q.*).)

*within 20 days of the date the declaration was signed.*" (Italics added.) "This statute imposes an official duty on hospital staff to forward signed voluntary declarations of paternity for filing. Accordingly, once [a party] provided prima facie proof that he signed a voluntary declaration of paternity, . . . he was entitled to rely upon the presumption of Evidence Code section 664 to establish that the document was properly filed, and it was the [objecting party's] burden to disprove this fact." (*In re Raphael P.* (2002) 97 Cal.App.4th 716, 738 [118 Cal.Rptr.2d 610].)[5] Michael did not meet his burden of showing the declaration was not filed with the DCSS. Further, the County of Riverside's DCSS obtained a child support order against Andrew, indicating his voluntary declaration was filed with the DCSS.

Michael's reliance on *In re D.R.* (2011) 193 Cal.App.4th 1494 [122 Cal.Rptr.3d 753] (*D.R.*), is misplaced. In *D.R.*, the court held there was no presumption a voluntary declaration of paternity was filed with the DCSS when the declaration "was not witnessed by an employee of the DCSS or hospital staff but by mother's counsel who had no statutory duty to forward it to the DCSS." (*Id.* at p. 1511.) Under that circumstance, Evidence Code section 664 was inapplicable. (193 Cal.App.4th at p. 1511.) Here, an employee of the medical center where Levi was born witnessed Andrew's signature. Michael ignores this distinction.

B

Alternatively, Michael submits that even when a voluntary declaration of paternity is valid, the juvenile court must engage in a weighing analysis under section 7612, subdivision (b), when another man has presumed father status under section 7611, subdivision (d). Section 7612, subdivision (b) provides, "If two or more presumptions arise under Section . . . 7611 that conflict with each other, . . . the presumption which on the facts is founded on the weightier considerations of policy and logic controls." (§ 7612, subd. (b).) Michael contends we must reverse the orders and remand the matter to the court for the weighing process.

Michael acknowledges that in *Kevin Q.*, Division Three of the Fourth District Court of Appeal rejected the same argument. In *Kevin Q.*, one man (Brent) had signed a voluntary declaration of paternity, and another man (Kevin) fell within the definition of presumed father under section 7611, subdivision (d), because he took the child into his home and held him out as

---

[5] Evidence Code section 664 provides: "It is presumed that official duty has been regularly performed." " 'This presumption "affect[s] the burden of proof' (Evid. Code, § 660), meaning that the party against whom it operates . . . has "the burden of proof as to the nonexistence of the presumed fact.["] (Evid. Code, § 606 . . .)' " (*In re Raphael P., supra,* 97 Cal.App.4th at p. 738.)

his own child. (*Kevin Q., supra*, 175 Cal.App.4th at pp. 1130, 1139.) The juvenile court had balanced the interests under section 7612, subdivision (b), and ruled in favor of Kevin. (*Kevin Q., supra*, at p. 1137.)

The appellate court disapproved of the weighing process, as the effect of a voluntary declaration is purely one of law. (*Kevin Q., supra*, 175 Cal.App.4th at p. 1139.) It reversed the judgment, explaining: "The language of section 7573 is clear: A voluntary declaration of paternity, duly completed and filed after 1996, has 'the same force and effect as a judgment for paternity . . . .' Equally clear is the language of section 7612, subdivision (c): A section 7611 presumption 'is rebutted by a judgment establishing paternity of the child by another man.' And section 7612, subdivision (a), listing the section 7611 presumptions that are rebuttable, expressly *excludes* presumed father status arising from a declaration of paternity as one of the rebuttable presumptions." (*Kevin Q., supra*, at p. 1137, fn. omitted.)

The court added: "Section 7575 delineates the only circumstances under which a court may set aside a voluntary declaration of paternity. No statute grants a court the discretion to ignore, or treat as a rebuttable presumption, a voluntary declaration of paternity accorded the force of a judgment under section 7573. It is a 'cardinal rule that courts may not add provisions to a statute.' " (*Kevin Q., supra*, 175 Cal.App.4th at p. 1138.) The court concluded, "Brent signed and filed a valid declaration of paternity that has the force [and effect] of a judgment under section 7573 and trumps Kevin's presumption under section 7611, subdivision (d)." (*Kevin Q., supra*, at p. 1139.)

Michael asserts we should reject *Kevin Q.* because *In re E.O.* (2010) 182 Cal.App.4th 722 [107 Cal.Rptr.3d 1] (*E.O.*), sets forth the "better view." *E.O.*, however, does not stand for the proposition Michael urges. "A decision is authority only for the point actually passed on by the court and directly involved in the case. General expressions in opinions that go beyond the facts of the case will not necessarily control the outcome in a subsequent suit involving different facts." (*Gomes v. County of Mendocino* (1995) 37 Cal.App.4th 977, 985 [44 Cal.Rptr.2d 93].)

In *E.O.*, N.M. sought presumed father status based on a paternity and child support judgment. The judgment was not based on a voluntary declaration of paternity. The court rejected his claim that because of the judgment, it was immaterial that he did not qualify as a presumed father under any of the categories enumerated in section 7611. Michael focuses on the opinion's statement that a "prior paternity judgment is simply not one of the ways set forth in . . . section 7611 that a man can achieve presumed father status." (*E.O., supra*, 182 Cal.App.4th at p. 727.) He asserts that because a voluntary

declaration of paternity has "the same force and effect as a judgment for paternity" (§ 7573), "[t]here is no practical difference between a paternity judgment rendered in a child support matter and a voluntary declaration of paternity executed by a man at the hospital."

Michael's attempt to analogize *E.O.* is faulty. The difference between a judgment of paternity arising from a voluntary declaration of paternity and a judgment of paternity not arising from such a declaration is that section 7611 expressly recognizes the former type as establishing presumed fatherhood. Section 7611 states a "man is presumed to be the natural father of a child if he meets the conditions provided in . . . Chapter 3 (commencing with Section 7570) of Part 2 or in any of the following subdivisions . . . ." Michael would have us ignore the express language of section 7611.

■ We agree with the *Kevin Q.* analysis that presumed fatherhood based on a voluntary declaration of paternity is not to be weighed against other section 7611 presumptions. (*Kevin Q., supra,* 175 Cal.App.4th at p. 1141.) Indeed, that result is mandated by the statutory scheme. Andrew's voluntary declaration of paternity, which has the same force and effect as a paternity judgment (§ 7573), rebuts Michael's presumption under section 7611, subdivision (d) as a matter of law (§ 7612, subds. (a), (c)), and thus subdivision (b) of section 7612 is not triggered. In other words, since Andrew's presumption *extinguishes* Michael's presumption, there are not two conflicting presumptions subject to the weighing process.

■ Michael argues that since he provided for Levi from the time he was eight months old, he is Levi's "real" father and deserves presumed father status over Andrew. It is not Michael's lack of a biological relationship with Levi, however, that precludes him from being the presumed father. Rather, Andrew's voluntary declaration trumps presumed father status under section 7611, subdivision (d) despite any inequities. (*Kevin Q., supra,* 175 Cal.App.4th at pp. 1140–1141.) ■ As *Kevin Q.* points out, while a voluntary declaration may be a basis for a visitation and custody order, the " 'statutory scheme on voluntary declarations does not in and of itself determine child custody.' [Citation.] In any event, our decision here is mandated by the Family Code. We may not rewrite the legislative scheme." (*Kevin Q., supra,* at p. 1141, fn. omitted.) The court's ruling is proper.

## II

### *Custody*

Jade contends the court improperly removed the children from her custody. She submits "[t]here is simply no real evidence that [she] was not capable of protecting Maddox and Levi."[6]

"Before the court may order a minor physically removed from his or her parent, it must find, by clear and convincing evidence, the minor would be at substantial risk of harm if returned home and there are no reasonable means by which the minor can be protected without removal." (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1136 [98 Cal.Rptr.2d 715], disapproved on another ground in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 749, fn. 6 [110 Cal.Rptr.2d 828, 28 P.3d 876]; see Welf. & Inst. Code, § 361, subd. (c)(1).) "While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824 [2 Cal.Rptr.2d 429].)

"We review a juvenile court's custody placement orders under the abuse of discretion standard of review; the court is given wide discretion and its determination will not be disturbed absent a manifest showing of abuse. [Citations.] 'Broad deference must be shown to the trial judge. The reviewing court should interfere only " 'if we find that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did.' " ' " (*Alicia B. v. Superior Court* (2004) 116 Cal.App.4th 856, 863 [11 Cal.Rptr.3d 1], citations omitted.)

Jade emphasizes the nature of the juvenile court's "clear and convincing" test. As this court has explained, however, " 'on appeal from a judgment required to be based upon clear and convincing evidence, "the clear and convincing test disappears . . . [and] the usual rule of conflicting evidence is applied, giving full effect to the respondent's evidence, however slight, and disregarding the appellant's evidence, however strong." [Citation.]' [Citation.] 'We have no power to judge the effect or value of the evidence, to weigh the evidence [or] to consider the credibility of witnesses . . . .' [Citation.]" (*In re Mark L.* (2001) 94 Cal.App.4th 573, 580–581 [114 Cal.Rptr.2d 499], fn. omitted.)

---

[6] We do not consider footnote 3 of Jade's opening brief, which, without any citation to the record, challenges the testimony of Maddox's treating pediatrician as to the nonaccidental cause of his trauma. Neither Jade nor Michael presented any medical evidence, and footnote 3 is based on the speculation of her counsel.

We find no abuse of discretion. At the hearing, the social worker, Madeiros, testified she had spoken with Jade several times about Maddox's injuries, and Jade never expressed an understanding that Michael could have inflicted them. Madeiros stated that "[f]or the most part she has stated . . . they're a loving family; he's a good guy. She doesn't believe that he would have done that." Madeiros testified she recommended against placing the children with Jade because "I would have concerns that she would facilitate unsupervised contact between [Michael] and the children." Madeiros believed Jade and Michael were still living together, and they adduced no evidence to the contrary. Contrary to Jade's assertion, the court could reasonably find Madeiros's belief as to the parents' living situation was not speculation. The Agency's report indicates Madeiros got the information from Jade. We will not tamper with the court's assessment of potential danger to the children.

## DISPOSITION

The orders are affirmed.

Nares, J., and Irion, J., concurred.