Filed 4/8/13  In re L.C. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re L.C., a Person Coming Under the Juvenile Court Law. | H038493 (Santa Clara County Super. Ct. No. JD19419) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, Plaintiff and Respondent, v. J.M., Defendant and Appellant. | |

In this dependency matter, the minor, L.C., was adjudged a dependent child of the court (Welf. & Inst. Code, § 300, subd. (b)) and her mother's boyfriend, J.M., whom L.C. knew as "daddy," was found to be her presumptive father (Fam. Code, § 7611, subd. (d)).[1]  The juvenile court later vacated its finding of presumed fatherhood, concluding that a 2009 paternity judgment in favor of R.C. conclusively rebutted the presumption that J.M. was the father.  J.M. appeals.  L.C. joins his argument on appeal.  We shall affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case involves two dependency petitions, one filed in 2009 and the instant petition filed in 2012.

---

[1] Further undesignated section references are to the Family Code.

L.C. lived with mother, J.M., and her half sibling, A.M. (J.M.'s biological child), from 2008, when L.C. was six months old, to 2010, when J.M. and mother broke up. Sometime in 2008, J.M. went to jail and mother struggled with caring for L.C. by herself. She put L.C. in the care of R.C., L.C.'s biological father. It was during the time that R.C. supposedly had custody of L.C. that the 2009 dependency was filed.

The report filed for the initial hearing in the 2009 case states, "Paternity is not established. [R.C.] reports that he did not sign the declaration of paternity after the child was born. Both parents are requesting a paternity test." During proceedings on March 9, 2009, mother's counsel stated that "[mother] is not opposed to presumed father status for [R.C.]." Father's counsel replied, "Your Honor, my client has been seeking presumed father status since the initial hearing and so we're happy to hear mother is not contesting that anymore." Counsel for L.C. and counsel for the Santa Clara County Department of Family and Children's Services (Department) each stated they had "no objection" to R.C. having status as a "presumed father." The juvenile court signed and filed a "Parentage-Findings and Judgment" declaring R.C. to be the "legal parent" of L.C. R.C. was offered reunification services but did not participate. Mother ultimately reunited with L.C. and was awarded legal and physical custody. Visitation with R.C. was to be arranged by the parents.

In February 2010, in proceedings in family court, the Santa Clara County Department of Child Support Services obtained a "Judgment Regarding Parental Obligations" ordering R.C. to pay mother "$0.00/ZERO" per month child support and to make efforts to find work. The family court "found paternity had been established by the Juvenile Court."

When the instant case commenced in February 2012, R.C.'s whereabouts were unknown. In a report filed for the initial hearing the reporter notes, "It is believed that in 2009, the Court found [R.C.] a presumed father for the child, as paternity testing revealed he was the biological father." R.C. was identified at the outset of the instant matter to be

2

L.C.'s biological father. L.C. thought of J.M. as her father. She had lived with him and mother when they were together and J.M. had regularly visited L.C. and A.M. after the breakup. L.C. thought of J.M., A.M. and J.M.'s mother as her family. R.C. had not maintained visitation with L.C. Indeed, L.C. did not know who R.C. was.

The instant matter arose following a welfare check at mother's home during which police officers found mother to be under the influence of drugs and the home to be unsafe for the children. J.M. was unable to care for the girls as he was participating in "prop 36 services" following a 2010 conviction for illegal possession of drugs. On February 16, 2012, the juvenile court detained L.C. and A.M. and ordered them to be placed with J.M.'s mother. The court found J.M. to be A.M.'s presumed father based upon a voluntary declaration of paternity and to be L.C.'s presumed father under section 7611, subdivision (d).

The Department eventually located R.C. in Oceano where he had been living for the last several years. He was steadily employed and claimed to have maintained his sobriety since 2006. He had been paying child support for L.C. for the preceding one and one-half to two years. He told the Department that he was ready to assume custody of L.C.

When the paternity issue came before the juvenile court, the court set aside its finding that J.M. was the presumed father, concluding that the court was bound by the prior judgment granting R.C. "presumed father status." Citing section 7612, subdivision (c), the court held that the presumption of paternity in favor of J.M. was rebutted, as a matter of law, by "[R.C.'s] paternity judgment, which was obtained prior to the presumed father determination as to [J.M.]." Citing *In re Cheyenne B.* (2012) 203 Cal.App.4th 1361, 1376, 1378, the court noted that the existence of a "paternity judgment" does not require the court to find the man to be the presumed father for purposes of a dependency proceeding. But R.C. had been previously declared to be a presumed father in the earlier dependency and the parties had presented no authority to support the argument that the

3

prior finding could be overridden in a subsequent dependency.  Accordingly, the juvenile court vacated the order declaring J.M. to be the presumed father and held that R.C. was L.C.'s presumed father.

J.M. appeals from that ruling and L.C. joins his argument.  They maintain that the child support order was not binding and that the juvenile court abused its discretion in failing to hold a hearing under section 7611 to redetermine the presumed-father issue.

## II.    DISCUSSION

### A.    *Legal Framework*

"Paternity disputes are governed by a conglomeration of three sets of laws:  The Uniform Parentage Act (Fam. Code, §§ 7600-7730, hereafter the UPA), the Uniform Act on Blood Tests to Determine Paternity (§§ 7550-7557), and other Family Code sections enacted by the Legislature (§§ 7540-7541, 7570-7577).  Under the UPA, a man is 'presumed to be the natural father of a child' if he meets certain conditions described in section 7611." (*In re Jesusa V.* (2004) 32 Cal.4th 588, 628 (dis. opn. of Kennard, J.) (*Jesusa V.*), fn. omitted.)  Under section 7611 a man is presumed to be the natural father if he made a voluntary declaration of paternity (§ 7570 et seq.) or is a nonsterile husband who cohabited with the mother at the time of conception (§ 7540 et seq.).  A man may also be the presumed father in four additional circumstances described by subdivisions (a) through (d) of section 7611:  "(a) He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within 300 days after the marriage is terminated . . . . [¶] (b) Before the child's birth, he and the child's natural mother have attempted to marry . . . . [¶] (c) After the child's birth, he and the child's natural mother have married, or attempted to marry, . . . [¶] (d) He receives the child into his home and openly holds out the child as his natural child."

In the dependency system, fathers are classified as alleged, natural, presumed, and de facto. (*In re A.A.* (2003) 114 Cal.App.4th 771, 779.)  Only presumed fathers are entitled to reunification services and, in appropriate cases, custody of the child.  (*In re*

4

*Jerry P.* (2002) 95 Cal.App.4th 793, 801.) Presumed fathers are those that meet the criteria set forth in section 7611. "Although more than one individual may fulfill the statutory criteria that give rise to a presumption of paternity, 'there can be only one presumed father.' " (*Jesusa V.*, *supra*, 32 Cal.4th at p. 603.)

As pertinent here, a presumption arising under section 7611 "is a rebuttable presumption affecting the burden of proof and may be rebutted in an appropriate action only by clear and convincing evidence." (§ 7612, subd. (a).) If two or more conflicting presumptions arise under section 7611, a court must reconcile these competing interests under section 7612, and under that section "the presumption which on the facts is founded on the weightier considerations of policy and logic controls." (*Id*. subd. (b).) "The presumption under Section 7611 is rebutted by a judgment establishing paternity of the child by another man." (*Id*. subd. (c).)

### B. *The Paternity Judgment*

J.M. argues that the 2010 child support order does not qualify as a "judgment establishing paternity" under section 7612, subdivision (c). Our analysis turns upon interpretation of the statute and is subject to our independent review. (*In re Levi H.* (2011) 197 Cal.App.4th 1279, 1286.) Our aim is to determine the intent of the Legislature. In so doing, we look first to the words of the statute, giving them their usual and ordinary meaning. (*Ibid.*)

"Section 7612, subdivision (c), provides that a paternity presumption under section 7611 'is rebutted by a judgment establishing paternity of the child by another man.' The plain language of that subdivision refers to a *judgment*, not merely a *finding* regarding biological tests used to determine if a man is the child's natural father. [Citation.] This distinction is critical. In enacting section 7612, subdivision (c), the Legislature established a categorical rule that allows a presumption of fatherhood to be rebutted when a judgment of paternity already exists, thereby preventing the court from determining parentage if it had previously been judicially determined. [Citations.] Stated another

5

way, a section 7611 presumption is rebutted by a prior judgment because that 'judgment acts to preclude the issue of paternity from being *redetermined*.' " (*In re P.A.* (2011) 198 Cal.App.4th 974, 982.)

Although J.M. challenges the effect of the 2010 child support order, the 2009 *judgment* declaring R.C. to be L.C.'s legal father is more pertinent. That judgment arose from the parties' 2009 agreement that R.C. was L.C.'s presumed father. Indeed, the record contains both the reporter's transcript of the proceedings at which mother, R.C. and L.C. all agreed to the court's declaring R.C. to be the presumed father and a copy of the "Parentage-Findings and Judgment" declaring R.C. to be her "legal parent."

There is no dispute that a stipulated judgment of paternity rebuts a presumption of parenthood arising under section 7611, subdivision (d). (*Barkaloff v. Woodward* (1996) 47 Cal.App.4th 393, 399 (*Barkaloff*).) As the *Barkaloff* case explained, although Barkaloff claimed to be a presumed natural father under section 7611, subdivision (d), "the section 7611, subdivision (d) presumption was conclusively rebutted under section 7612 by a stipulated 'judgment of paternity of the child (Cassie) by another man (Garcia).' Once the presumption of 'natural father' was rebutted, Barkaloff was not a 'natural father' under the UPA." (*Barkaloff*, *supra*, at p. 399.)

Whether or not the 2010 child support judgment qualifies as a "judgment establishing paternity" within the meaning of section 7612, subdivision (c), the "Parentage Findings and Judgment" certainly falls within the plain language of the statute. Accordingly, there was no error in the juvenile court's conclusion that the presumption in favor of J.M. was rebutted by the prior judgment. And, because the juvenile court did not err in setting aside its finding that J.M. was the presumed father, we need not reach J.M.'s argument that the court should have held a hearing to determine which presumption should prevail.

L.C. joins J.M.'s argument and adds her own contention that the statutory scheme deprives her of her constitutional right to due process because it does not allow for

6

reconsideration of the prior paternity judgment. Following the statutory scheme, she says, "deprived [her] of the right to reunify with the person she considered to be her father." The fault in the argument lies in her premise, which is that the juvenile court erred in 2009 in finding R.C. to be her presumed father. Thus, her argument amounts to a collateral attack upon a judgment that was final long ago, one to which L.C. expressly declined to object at the time it was entered. Appellate structure "places a high premium, as it must, on predictability. No legal system is worth anything unless it provides for stable, final judgments, which can only be attacked in limited, definable ways. Build too much play into the system and, legally speaking, the fabric of time and space will collapse. [¶] But there are countervailing concerns. Each dependency case involves an innocent child, whose life is tossed about by a whole industry of well-meaning adults, of whom all levels of court are a part. And courts must not lose sight of the purpose of the dependency system in the first place. '[T]he paramount concern of the appellate court in all dependency proceedings is for the protection and welfare of the child.' " (*In re Jayson T.* (2002) 97 Cal.App.4th 75, 88, disapproved on another point in *In re Zeth S.* (2003) 31 Cal.4th 396, 413-414.)

Section 7612, subdivision (c), as the Legislature wrote it, is a sound rule. A rule precluding serial redeterminations of parentage is more conducive to stabilizing a child's life than the contrary rule would be. The countervailing concern, the realities of a child's day-to-day life, may sometimes require the juvenile courts to adapt their orders to take those realities into account. Our juvenile courts are well equipped to do that. Indeed, by refusing to find J.M. to be a presumed father, the juvenile court may have deprived J.M. of the *right* to reunification services, but it did not necessarily deprive L.C. of her right to be placed with him. J.M. need not be a presumed father to qualify for placement as a nonrelated extended family member (Welf. & Inst. Code, § 362.7) or be declared L.C.'s

7

de facto parent (Cal. Rules of Court, rule 5.502(10)).  In other words, L.C.'s ability to maintain her relationship with J.M. depends in large part upon J.M.[2]

### C.        *Disposition*

The order of the juvenile court setting aside its declaration that J.M. is the presumed father of L.C. is affirmed.

_____
                                                            Premo, J.

WE CONCUR:


_____
        Rushing, P.J.


_____
        Elia, J.

---

[2] L.C. implies that the trial court erred by naming R.C. the presumed father, a conclusion that is not compelled by section 7612, subdivision (c).  (See *In re Cheyenne B.*, *supra*, 203 Cal.App.4th at p. 1378.)  According to L.C., she was prejudiced by the ruling because it gives R.C. the right to "reunify" when he had played practically no part in her life at all.  At L.C.'s request, we have taken judicial notice of subsequent juvenile court orders terminating reunification services for R.C.  Thus, the alleged prejudice no longer exists.