Filed 9/27/13  In re B.J. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re B.J., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> T.M., <br><br> Defendant and Appellant. | A137904 <br><br> (Alameda County <br> Super. Ct. No. OJ12019488) |

T.M. (hereafter mother) appeals from a February 14, 2013 jurisdictional and dispositional order, which provided that T.J., as the child's presumed father, was entitled to family reunification services.[1]  On appeal mother argues the evidence was insufficient to support the court's finding that T.J. was the child's presumed father based on the execution and filing of a voluntary declaration of paternity with the appropriate state agency.  We affirm.

---

[1]  Mother's appeal from the February 14, 2013, order brings up for review the court's presumed father finding made in the December 14, 2012, order.  (Welf. & Inst. Code, § 395, subd. (a); *In re Sheila B.* (1993) 19 Cal.App.4th 187, 196 ["[t]he dispositional order is the adjudication of dependency and is the first appealable order in the dependency process"].)  Accordingly, we dismiss mother's separate appeal from the December 14, 2012, order.

1

## FACTUAL AND PROCEDURAL BACKGROUND[2]

On August 22, 2012, the Alameda County Social Services Agency (hereafter the agency) filed a petition seeking an adjudication that mother's then four-month-old child be declared a dependent of the court based on allegations that mother and the child's alleged father, T.J., had failed to protect the child. (Welf. & Inst. Code, § 300, subd. (b).) In the agency's report prepared for the detention hearing, the social worker reported that T.J. was present at the birth of the child, he was listed as the father on the child's birth certificate[3], and he held the child out to the community as his child. However, mother believed T.J. might not be the child's biological father.

At the August 23, 2012 detention hearing, T.J. requested elevation of his status from alleged father to presumed father, which was opposed by mother. The juvenile court found a sufficient basis to detain the child but allowed placement of the child in the home of T.J. and T.J.'s mother, where the child had been living since birth. The court also ordered T.J. to submit to a paternity test. On October 11, 2012, the agency social worker filed an addendum report in which she indicated the paternity tests showed T.J. was not the child's biological father.

In October and November 2012, the court (Hon. Kimberly Briggs) held hearings on the issue of T.J.'s request for presumed father status. The court admitted into evidence the agency's reports and heard testimony from mother, T.J., and T.J.'s mother.

---

[2]   We recite only those facts as are necessary to give context to the issues raised on this appeal.

[3]   The child's certified birth certificate lists T.J. as the father. There is a section titled, "Informant and Birth Certification." The form then provides a space for the signature of "parent or other informant" to certify that "I have reviewed the stated information and that it is true and correct to the best of my knowledge." The certificate is signed by a medical records clerk as the certifying "informant." The form also provides a space for the signature of an "attendant/certifier" to certify that "the child was born alive at the date and place stated." The certificate is signed by a "supervisor" as the certifier of birth. The space for a signature of the local registrar is signed by a physician and the document was accepted for registration on April 24, 2012.

At the conclusion of the hearing, the agency argued T.J.'s presumed father status was demonstrated by his name on the child's birth certificate, which could not occur unless mother and father signed a voluntary declaration of paternity. The agency, however, had not been able to secure a copy of the voluntary declaration of paternity, which was required to be filed with the state Department of Child Support Services. The court asked the social worker to review the child's hospital records for any pertinent information regarding the voluntary declaration of paternity.

On December 13, 2012, the agency social worker filed a report in which she described her efforts to secure a copy of the voluntary declaration of paternity. The social worker had made two requests for a copy of the document from the "California Department of Child Support Services." The inquiries resulted in the same response, "no record was found" for the child. The social worker also went to the medical records department of the child's birth hospital and requested a copy of the "Declaration of Paternity" form. The hospital supervisor said there was no copy of the document in the hospital file. She explained that at the time of the child's birth, it was not the hospital's protocol to keep a copy of the voluntary declaration of paternity form in the hospital file. Instead, the hospital file contained the notation, "paternity sent," which meant "the paternity information (declaration of paternity form) was sent to the State Paternity Opportunity Program (POP)," [4] and it was the hospital's protocol to give the parents a carbon copy of the form. The hospital supervisor further stated that "in all cases the mother and father must sign the declaration of paternity in order for the father to be listed on the birth certificate."

---

[4] The Paternity Opportunity Program, implemented in 1995 by the state Department of Child Support Services, handles the filing of declarations of paternity, also known as POP forms. (See <http://www.childsup.ca.gov/Resources/EstablishPaternity.aspx > [as of Sept. 19, 2013.) Voluntary declarations of paternity (POP forms) are offered to unmarried mothers in the event of a live birth (Fam. Code, § 7571), and the state Department of Children Support Services "maintains that the POP [form] should not be given to married mothers." (*H.S. v. Superior Court* (2010) 183 Cal.App.4th 1502, 1506.)

3

At the December 14, 2012, hearing, the juvenile court found T.J. was the child's presumed father "based on the law of the Declaration of Paternity presumably being filed." Mother objected on the ground that either the agency social worker or T.J. should be required, as part of their burdens of proof, to produce a copy of the signed declaration of paternity. However, the court agreed with the agency counsel that there was sufficient information in the agency report to allow the court to make the presumed father finding, and it was mother's burden to show the declaration had not been filed with the state.

At a February 14, 2013, hearing, the parties appeared before Judge Charles Smiley for resolution of the jurisdictional and dispositional issues. The agency recommended that the juvenile court declare the child a dependent, and order family reunification services for mother and T.J. Mother objected to the court ordering reunification services for T.J. Although conceding Judge Briggs had heard evidence and made a finding that T.J. was the child's presumed father, mother continued to object "on the record for purposes of any appeal." After mother and T.J waived their rights to a contested hearing, the court issued its decision based on the agency reports. The court found true allegations of failure to protect and provide support for the child as set forth in an amended petition filed on December 4, 2012, declared the child a dependent, and determined the child had to be removed from the physical custody of both mother and T.J. The agency was granted custody of the child for placement in the home of an approved family member (the child's maternal great aunt). Mother and T.J. were granted family reunification services. Mother timely appeals.[5]

## DISCUSSION

In determining that T.J. is the child's presumed father, the juvenile court relied on the preamble in Family Code section 7611,[6] which allows a man to qualify for presumed

---

[5] The appeal is opposed only by T.J. No briefs have been filed on behalf of the agency or the child.

[6] All further unspecified statutory references are to the Family Code.

father status "if he meets the conditions of section 7570 et. seq." (*In re Levi H.* (2011) 197 Cal.App.4th 1279, 1286 (*Levi H.*).) Section 7571, subdivision (a), states: "[U]pon the event of a live birth, prior to an unmarried woman leaving any hospital, the person responsible for registering live births under Section 102405 of the Health and Safety Code shall provide to the natural mother and shall attempt to provide, at the place of birth, to the man identified by the natural mother as the natural father, a voluntary declaration of paternity together with the written materials described in Section 7572. Staff in the hospital shall witness the signatures of parents signing a voluntary declaration of paternity and shall forward the signed declaration to the Department of Child Support Services within 20 days of the date the declaration was signed. A copy of the declaration shall be made available to each of the attesting parents." " 'Except as provided in Sections 7575 [rescission or motion to set aside declaration], 7576 [effect of declaration made on or before December 31, 1996], and 7577 [effect of minor's declaration], a completed voluntary declaration of paternity, as described in Section 7574 [form requirements], that has been filed with the Department of Child Support Services shall establish the paternity of a child and shall have the same force and effect as a judgment for paternity issued by a court of competent jurisdiction. The voluntary declaration of paternity shall be recognized as a basis for the establishment of an order for child custody, visitation, or child support.' (§ 7573.)" (*In re Raphael P.* (2002) 97 Cal.App.4th 716, 737 (*Raphael P.*).)

Because Health and Safety Code section 102425 prohibits listing an unmarried father on a child's birth certificate absent a signed voluntary declaration of paternity[7], T.J.'s name on the child's birth certificate was "prima facie proof that he signed a

---

[7]    Health and Safety Code section 102425, which sets forth the information to be included in a birth certificate, provides, "If the parents are not married to each other, the father's name shall not be listed on the birth certificate unless the father and mother sign a voluntary declaration of paternity at the hospital before the birth certificate is prepared." (*Id.*, subd. (a)(4).)

5

voluntary declaration of paternity." (*Raphael P., supra*, 97 Cal.App.4th at p. 738.) Additionally, relying on the hospital supervisor's reported statements and Evidence Code section 664,[8] the juvenile court could reasonably find that the hospital staff had performed their "official" duties of having mother and T.J. sign a voluntary declaration of paternity before preparing the birth certificate, and that the original voluntary declaration of paternity had been sent for filing to the appropriate state agency. (*In re Raphael P., supra,* at p. 738.) We see no merit to mother's argument that the nonexistence of a voluntary declaration of paternity is demonstrated by the circumstance that neither T.J. nor the agency submitted a copy of the document in court. The juvenile court could reasonably find that the failure to produce a copy of the document, standing alone, was insufficient to rebut the presumption of the existence of a signed and filed voluntary declaration of paternity.[9]

---

[8] "Evidence Code section 664 provides: 'It is presumed that official duty has been regularly performed.' ' "This presumption 'affect[s] the burden of proof' (Evid. Code, § 660), meaning that the party against whom it operates . . . has 'the burden of proof as to the nonexistence of the presumed fact.['] (Evid. Code, § 606 . . .)." ' " (*Levi H., supra,* 197 Cal.App.4th at p. 1288, fn. 5.)

[9] We express no opinion on mother's further contentions, raised for the first time on appeal, that the nonexistence of a signed and filed voluntary declaration of paternity is "suggested" by the circumstances that there is no evidence in the record demonstrating that a child support order was issued against T.J., that the hospital staff knew mother and T.J. were not married, or that the hospital staff gave copies of the voluntary declaration of paternity to mother and T.J. We also reject mother's suggestion that in the absence of a request to rescind or set aside any voluntary declaration of paternity, the juvenile court should have sua sponte granted such relief on the ground that paternity testing conclusively established T.J. was not the child's biological father. (*In re Nicholas H*. (2002) 28 Cal.4th 56, 63-64 ["for persons who are presumed fathers under section 7611 by virtue of a voluntary declaration of paternity pursuant to section 7573, the Legislature permits but does not require that blood test evidence may be considered to extinguish such a person's presumed paternity"]; *Kevin Q. v. Lauren W.* (2009) 175 Cal.App.4th 1119, 1132 ["[e]ven when genetic tests show that a man who signed a declaration of paternity is not the child's biological father, the court may decide that denying an action to set aside the declaration is in the child's best interests . . . ."].)

In sum, we conclude mother has failed to demonstrate that the juvenile court erred in granting T.J. presumed father status based on the execution and filing of a voluntary declaration of paternity with the appropriate state agency. In light of our determination, we need not address mother's other contentions.

## DISPOSITION

The appeal from the December 14, 2012 order is dismissed. The February 14, 2013 order is affirmed.

_____
Jenkins, J.

We concur:

_____
McGuiness, P. J.

_____
Pollak, J.