Filed 4/7/15  In re N.J. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re N.J. et al., Persons Coming Under the Juvenile Court Law. | |
| MENDOCINO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>T.S. et al.,<br><br>          Defendants and Appellants. | A141600<br><br>(Mendocino County Super. Ct. Nos. SCUK-JVSQ-12-16594, SCUK-JVSQ-12-16595) |

**INTRODUCTION**

T.S., the mother of sisters N.J. and M.L. (Mother), appeals from the order terminating her reunification services.  A.S., the maternal grandfather of N.J. and M.L. (Grandfather) appeals from the order placing N.J. in a group home, asserting he was entitled to preferential consideration for placement.  Mother merely joins and adopts by reference the arguments made by Grandfather, and raises no issues regarding termination of reunification services, thereby waiving that claim.[1]  Accordingly, we affirm the order terminating reunification services to Mother.  We conclude Grandfather waived any

---

[1]  Because neither appellant has raised any issue regarding M.L., we grant the motion of the Mendocino County Department of Social Services (Department) to dismiss the appeal as to M.L.

1

claim regarding the immediate placement of N.J. with him, and in any event, the juvenile court did not abuse its discretion in changing N.J.'s placement to a group home. We affirm the placement order.

## PROCEDURAL AND FACTUAL BACKGROUND

We set forth only those facts necessary for resolution of the issues on appeal.

N.J. and M.L., 10 years old and seven years old, respectively, when the juvenile dependency petition was filed in September 2012, were then living with their maternal grandparents and Mother. The maternal grandparents had petitioned for and been appointed their temporary guardians in July 2012. The Department filed a petition alleging four counts of failure to protect the minors, based on Mother's uncontrolled medical condition (seizure and anxiety disorders), drug use (marijuana and prescription medications) and domestic violence.

The court found continued placement in the home of the temporary guardians or the parents would be contrary to the minors' welfare. The minors were detained and placed in foster care.

After the detention hearing, the Department filed an amended petition adding allegations regarding the grandparents, including that N.J. and M.L. had been physically abused by Grandfather and their grandmother had been unable to protect them. About a month later, the Department filed a second amended petition, eliminating those allegations.

At the jurisdictional hearing in November, Mother admitted the allegations of the amended petition. The court terminated the grandparents' temporary guardianship, and ordered services for Mother. The Department recommended against placement with the grandparents because the minors did not want to live with them and indicated Grandfather hit them.

The grandparents filed a request for de facto parent status, which the court granted in December.

In a report for the six-month review hearing, the Department noted Mother had minimally complied with services. She had been terminated from an alcohol and other

2

drugs program, and had married a man with a criminal record, including domestic violence and controlled substance use.  The minors were both placed at the Children's Village after they "received 7-Day notices from their foster placement due to ongoing behavioral and emotional outbursts."  N.J. physically threatened another resident of Children's Village and "tested the boundaries of staff by running around the premises at 8:30 at night" and climbing on the roof, necessitating a call to police.  The court continued reunification services to Mother, and authorized the Department to permit unsupervised visitation with the grandparents for a minimum of one hour monthly.

In its report for the 12-month review hearing, the Department indicated N.J. had been discharged from the Children's Village due to her defiant behavior and leaving the premises at night.  She was placed in a therapeutic licensed home.  M.L. remained at Children's Village, and had behaviors that required a high level of care.  The social worker recommended both minors continue to receive therapy.  Mother had made minimal efforts to comply with her case plan.

The court approved a settlement agreement reached by the parties, under which services to Mother were extended for a period not to exceed 18 months.  The court also authorized unsupervised visits for the grandparents with N.J., which could be expanded to include overnight visits in the social worker's discretion.

The Department's report for the 18-month hearing in March 2014 indicated Mother was still not complying with her case plan.  She tested positive for drugs, appeared to be under the influence at a Women's Empowerment Support group, and was homeless.  The grandparents had engaged in services and were consistently visiting the minors.

On March 6, the court terminated reunification services to Mother.  It ordered as to N.J. a "permanent plan of placement with [foster mother], with a specific goal of placement with the maternal grandparents."  The court also increased visitation with the grandparents "to include overnight visits every other weekend," and up to three overnight visits per week at the discretion of the social worker.

3

On March 18, Grandfather's attorney received an email from the Department stating N.J. "may be moved to an out of county placement within the next 14 days." On March 19, Grandfather filed an order shortening time for a hearing the next day on "the [Department's] apparent plan to move [N.J.] to an out of county placement," noting notice of the placement change was statutorily inadequate.

The court set a hearing for March 20, at which Grandfather's attorney indicated "We did ask to have the hearing because it came to our understanding that [N.J.] might be quickly moved to a different placement. We just didn't receive the proper notification. My understanding is the minor's attorney thoughtfully was able to set up a therapeutic session between the grandparents and [N.J.] yesterday. I think that went well. I think [N.J.] was able to communicate some of her desires. [¶] My understanding, if I have it correct, is that *the grandparents are not today asking for placement of* [*N.J.*] *with them. They understand that* [*N.J.*] *may be moved back to Children's Village.* But I think the concerns are the grandparents do want the Court and [Department] to do everything they can to facilitate the goal of placing [N.J.] with them in a legal guardianship . . . ." (Italics added.) Grandmother's attorney stated "[t]his seems like a prime time to have placed [N.J.] with the grandparents. . . . [T]he *grandparents are very graciously willing not to push the issue today* given [N.J.'s] wishes which she shared last night. . . . But . . . there was no notice of the move for us" (Italics added.)

The court ordered the Department to hold a family planning meeting, to include the grandparents. Counsel for the Department informed the court at the March 25 hearing: "We did have a meeting with the grandparents . . . . And the plan is to go forward and move [N.J.] Her sister is placed in Santa Rosa. This way the siblings can be together. [¶] . . . We do have a plan to set up family therapy between the children and the grandparents, and we'll help them with visits." Counsel for grandmother indicated the Department agreed to "provide gas vouchers, they would increase visitation to allow more, in terms of frequency and lengths of visitation with the grandparents . . . and that they would facilitate what basically is the reunification plan which is essentially individual counseling . . . and some family counseling as well."

4

The court ordered N.J.'s placement changed to Children's Village. The court also ordered that "the Department will follow up on its promises to the family members that there will be gas vouchers for visitation, that the court-ordered visitation will continue to occur, and we'll return to court if there's a modification needed, and that counseling will be set up for the children and the maternal grandparents to facilitate the goal of reunification."

<h2 align="center">DISCUSSION</h2>

Grandfather maintains the court erred in failing to give preferential consideration to placement of N.J. with him, under Welfare and Institutions Code section 361.3,[2] rather than changing her placement to the Children's Village.

Section 361.3 provides in relevant part: "In any case in which a child is removed from the physical custody of his or her parents pursuant to Section 361, preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative . . . ." (§ 361.3, subd. (a).) " 'Preferential consideration' means that the relative seeking placement shall be the first placement to be considered and investigated. [¶] . . . [O]nly the following relatives shall be given preferential consideration for the placement of the child: an adult who is a grandparent, aunt, uncle or sibling." (§ 361.3, subd. (c).)

Grandfather maintains he sought to have N.J. placed with him in his ex parte application, which "stated, in part, that if [N.J.] was to be moved from her current placement, the maternal grandparents were requesting that the child be placed with them." His application stated "[Grandfather] feels that he and [grandmother] are ready, willing and able to resume full-time care of [N.J.] immediately and she shouldn't be placed back in Children's Village."

Grandfather never raised the issue of section 361.3 preferential placement consideration. Indeed, he specifically waived placement of N.J. with him at the hearing on March 20, although he was in agreement with the long-term goal of placement with

---

[2] All further undesignated statutory references are to the Welfare and Institutions Code.

him and grandmother. At the hearing, Grandfather's attorney stated the grandparents *"are not today asking for placement of* [N.J.] *with them. They understand that* [N.J.] *may be moved back to Children's Village.* But I think the concerns are the grandparents do want the Court and [Department] to do everything they can to facilitate the goal of placing [N.J.] with them in a legal guardianship . . . ." (Italics added.)

At the continued hearing on March 25, the parties indicated there had been a family planning meeting with the grandparents. The Department's attorney indicated "the plan is to go forward and move [N.J.] . . . . This way the siblings can be together. [¶] On a separate issue, we did talk about the possibility of eventual placement with the grandparents. It's something that we do want to work toward although it's not formally in reunification. We do have a plan to set up family therapy between the children and the grandparents, and we'll help them with visits." At that point, Grandfather's attorney indicated "I know we haven't filed a 388, but since the court is determining placement, it certainly is appropriate to consider the grandparents as a placement option." He concluded, however, "I think there are a lot of reasons to keep [N.J.] in a local placement, not to uproot her, and to increase the contact [with grandparents] in that manner."

Even had Grandfather not waived the issue of immediate placement of N.J. with him, he has failed to demonstrate the placement order was an abuse of discretion. " 'We review a juvenile court's custody placement orders under the abuse of discretion standard of review; the court is given wide discretion and its determination will not be disturbed absent a manifest showing of abuse. [Citations.] "Broad deference must be shown to the trial judge. The reviewing court should interfere only ' "if we find that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did." ' " ' [Citation.]" (*In re Levi H.* (2011) 197 Cal.App.4th 1279, 1291.)

"The linchpin of a section 361.3 analysis is whether placement with a relative is in the best interests of the minor." (*Alicia B. v. Superior Court* (2004) 116 Cal.App.4th 856, 862–863.) The court considers numerous factors, including the special needs of the child, the wishes of the parent, relative and child, if appropriate, whether placement would be

with a sibling, the good moral character of the relative and any other adult living in their home, the nature and duration of the relationship between the child and the relative, and the relative's desire to care for, and to provide legal permanence for, the child if reunification is unsuccessful. (§ 361.3, subd. (a).)

Although section 361.3 was never triggered because Grandfather waived his request for immediate placement of N.J., the court had before it evidence of the factors to be considered under that section. The evidence showed N.J. had special needs in regard to her behavioral issues. She had been removed from a foster home placement and a group home based on her behaviors. Changing her placement to Children's Village, where her sister was placed, would allow her to be with her sibling. Grandfather expressed his desire to care for and provide legal permanence for N.J., and this was the long-term goal ordered by the court after termination of reunification services to Mother. Grandfather had, however, a criminal record and anger issues, although he had been addressing the anger issues. The grandparents had been consistently visiting N.J., including overnight visits.

The court indicated "there really are some important policies that are at odds in this case." The court noted the "strong public policy of [siblings] being placed together whenever possible," and stated "it appeared to benefit both girls to be placed [closer] together." The court also considered N.J.'s "strong desire" to be placed at Children's Village, and the fact she had already been informed she would be moved there. The social worker reported N.J. was being disruptive and oppositional in her current placement; behaviors she believed would escalate if the placement continued. The court noted the long-term goal, adopted by the Department, was placement with the grandparents. The court ordered placement at Children's Village, with visitation with the grandparents and Mother separately, gas vouchers provided to facilitate visitation, and

"counseling . . . set up for the children and the maternal grandparents to facilitate the goal of reunification."  We conclude this order was not an abuse of discretion.[3]

## DISPOSITION

The orders terminating reunification services to Mother and changing N.J.'s placement are affirmed.

_____
Banke, J.

We concur:


_____
Humes, P. J.


_____
Dondero, J.

---

[3]  The Department filed a motion seeking judicial notice of a subsequent order of the court in which the permanent plan for N.J. was changed to "placement with [a] group-home, and a specific goal of a less restrictive foster setting . . . ."  " 'On a case-by case basis, the reviewing court decides whether subsequent events in a dependency case have rendered the appeal moot and whether its decision would affect the outcome of the case in a subsequent proceeding.  [Citation.]' "  (*In re M.C.* (2011) 199 Cal.App.4th 784, 802.)  Although records of the juvenile court are an appropriate subject for judicial notice (Evid. Code, § 451) we deny the motion because the subsequent order is not relevant to the issue in this appeal.