Filed 1/14/22  In re E.G. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re E.G., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E076796 |
| Plaintiff and Respondent, | (Super.Ct.No. J287678) |
| v. | OPINION |
| M.G., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Erin K. Alexander, Judge.  Affirmed.

Emily Uhre, under appointment by the Court of Appeal, for Defendant and Appellant.

Michelle D. Blakemore and Tom Bunton, County Counsel, and Richard W. Van Frank, Deputy County Counsel, for Plaintiff and Respondent.

1

INTRODUCTION

M.G. (father), the biological father of E.G. (the child), appeals from a juvenile court's disposition order finding that he was the child's biological father and not his presumed father. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On January 5, 2021, the San Bernardino County Children and Family Services (CFS) filed a Welfare and Institutions Code section 300 petition on behalf of the child and his half siblings, Ad.E. and Al.E.[1] The child was nine years old at the time. The petition alleged that he came within Welfare and Institutions Code section 300, former subdivision (b) (failure to protect) and subdivision (g) (no provision for support). It specifically alleged that the child's mother S.G. (mother)[2] had a substance abuse problem, and father knew or should have known of the problem and failed to protect the child. It also alleged that father's whereabouts were unknown.

The social worker filed a detention report and stated that CFS received a referral after mother tested positive for methamphetamines at the birth of Al.E. The social worker interviewed mother, who reported that she was married to J.E., but was separated from him. She also reported that father was the biological father of the child, but she had not had any contact with him since the child was an infant. The social worker went to J.E.'s home to speak with him. J.E. said he and mother were trying to reconcile their

---

[1] Ad.E. and Al.E. are not subjects of this appeal. Thus, this opinion will focus on the child.

[2] Mother is not a party to this appeal.

2

relationship, and he was going to move out of his current residence and move into an apartment with her.

The court held a detention hearing on January 6, 2021, and detained the child in foster care. It also ordered father and mother (the parents) to produce the child's birth certificate.

*Jurisdiction/Disposition*

The social worker filed a jurisdiction/disposition report on January 28, 2021, and recommended that the court sustain the petition, declare the child, Ad.E., and Al.E. (the children) dependents of the court, provide reunification services to both mother and father, and place the children with J.E. on family maintenance. The social worker reported that J.E. was married to mother and was the father of Ad.E. and Al.E.

The social worker interviewed mother, who said she and father separated after the death of their second child. She stated that father was listed on the child's birth record but had not been in the child's life since the child was two years old and had not provided for him financially or emotionally. She said J.E. has raised the child as his own since the child was two years old. The child only knew J.E. as his father and called him "daddy."

The social worker also interviewed J.E., who confirmed that he had raised the child as his own since the child was two years old. J.E. said he loved the child as his own, he was the only father the child has ever known, and he has provided for the child both emotionally and financially. J.E. requested presumed father status and wanted to have the child returned to him.

3

The social worker interviewed father, as well. He said he got out of prison in 2019 and was currently on parole. Father said he had not been involved in the child's life since 2013, due to his life situation, but would now like to become involved.

The court held a jurisdiction/disposition hearing on February 2, 2021. This was father's first appearance in court, so the court asked him several questions. Father informed the court that he was never married to mother, but they were together for a long time. He said he was present at the hospital when the child was born, and he signed the birth certificate. He said he recognized the child as his son. When the court asked if he had provided any emotional or financial support, father said no. The court asked how often he had seen the child since 2013, and father said he had not seen him since then. The court stated that it understood J.E. had raised the child for the majority of his life, that the child saw him as his father, and that J.E. was requesting presumed father status. The court said it would be inclined to initially find two presumed fathers, but would "balance that out in favor of [J.E.], then find[ father] biological only and not in the best interest to offer services." Father's counsel requested a trial on the matter and also requested a visitation order. The court noted that it was not clear if the child understood that J.E. was not his father. It then authorized visitation to father, but only after CFS assessed whether it was in the child's best interest.

On March 8, 2021, the social worker filed an informational memorandum with the court. Pursuant to the report, J.E. said the child was aware that he was not his biological father, and that, "4 years ago or more," the child told his mother and J.E. that he no longer wanted to visit his biological father because father would make him walk on train

4

tracks in the middle of the night. The social worker talked with the child, who said he may or may not recognize his father. The child could not describe anything about the last time he saw father but said he would like to visit him. The social worker opined it would not be detrimental for the child to have supervised contact with father.

The court held a contested jurisdiction/disposition hearing on March 9, 2021. Father's counsel asked the court to find father to be the presumed father, asserting that he signed a voluntary declaration of parentage under Family Code section 7570,[3] which entitled him to presumed father status. Counsel further argued that, under section 7611, subdivision (d), and pursuant to father's statement at the last hearing, he lived with the child for the first two years of his life and held out the child as his own. Counsel asked the court to find father to be a presumed father; however, if it was going to find J.E. to be a presumed father and was "inclined to weigh the two," the court should find father to be the presumed father, primarily because he had been in the child's life, he did live with the child, and he signed the voluntary declaration of parentage. In the alternative, counsel argued that if the court found two presumed fathers, they would both be entitled to reunification services.

Counsel for the child stated that the child was now nine years old, and J.E. had been a stable father figure for more than half of his life. The child also lived with his half siblings, since J.E. was caring for them as well. Moreover, the child did not fully understand who father was, and he referred to J.E. as his father during an interview.

---

[3] All further statutory references are to the Family Code unless otherwise indicated.

Thus, the child's counsel requested the court to weigh in favor of J.E., find that father was merely a biological father, and find that it was not in the child's best interest to give father services. County counsel stated that CFS believed both fathers rose to the level of a presumed father, but "as the court is weighing the two fathers," it should find J.E. was the presumed father since he had been raising the child his entire life.

The court initially noted father's indication that he lived with the child and mother from 2009 to 2013, and the child was born in 2011. Father also said he had not seen the child since 2013, which was consistent with the information in the jurisdiction/disposition report, as well as the child's statement that he had a parental relationship with J.E., but really did not remember father. The court found, based on the fact that father signed the birth certificate at the hospital and did live with the child, that father was a presumed father. It also found, based on section 7611 and the established paternal relationship that J.E. had with the child, that J.E. was a presumed father. The court stated: "Upon balancing then, the issue is would it be—first, let me start with would it be detrimental to the child to not have two presumed fathers? And I don't find any evidence of detriment. [¶] The child does seem open to visitation but he has no current relationship with [father], hasn't seen him since he was a toddler, is secure in his relationship with [J.E.] and the siblings and has remained in [J.E.'s] care, so I don't find that there's any proof of detriment if there is not two presumed fathers and I find the weightier balance then is with [J.E.] is that [*sic*] the paternal relationship that the child has. He clearly looks to [J.E.] to meet his needs and has been residing in his care since he was a toddler. So I'm

6

going to balance out [father] to a biological father.  [¶]  I will be making orders regarding visitation but I'm going to leave [J.E.] as the sole presumed father."

The court then sustained the petition.  Regarding disposition, the court found that it would be detrimental to place the child with father, based on his lack of relationship and contact over the last seven years, that he was recently released from custody, and that he would need to show a period of stability and sobriety.  The court reiterated its finding that father was a biological father and that it was not in the child's best interest to offer him services, based on the fact that the child was in family maintenance with J.E.

DISCUSSION

I.  <u>The Voluntary Declaration of Parentage Did Not Entitle Father to Presumed Father</u>

<u>Status</u>

Father first contends that as a matter of law the juvenile court was required to grant him presumed father status since he executed a voluntary declaration of parentage when the child was born.  He claims the voluntary declaration of parentage has the legal effect of a paternity judgment; thus, under section 7612, subdivision (d), it rebutted J.E.'s "presumption" of paternity under section 7611, subdivision (d).  We disagree.

A.  *Relevant Law*

1.  *Uniform Parentage Act*

" 'The Uniform Parentage Act (UPA), Family Code section 7600 et seq., provides the statutory framework for judicial determinations of parentage, and governs private adoptions, paternity and custody disputes, and dependency proceedings.' " (*In re D.A.* (2012) 204 Cal.App.4th 811, 824.)  With regard to paternity, the UPA distinguishes

7

between "alleged," "biological," and "presumed" fathers. (See *Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 595-596.) "A man who may be the father of the dependent child but has not been established to be the natural or presumed father is an 'alleged father.' A man who has been established to be the biological father is a 'natural father.' A man who has held the child out as his own and received the child into his home is a 'presumed father.' '' (*In re Jerry P.* (2002) 95 Cal.App.4th 793, 801, fns. omitted (*Jerry P.*).) "Presumed father status ranks highest." (*Ibid.*) Only a "statutorily presumed father" is entitled to reunification services and custody of a child. (*Ibid*.)

Presumed parent status is governed by section 7611 of the UPA. In relevant part, section 7611 provides: "A person is presumed to be the natural parent of a child if the person meets the conditions provided in . . . Chapter 3 (commencing with Section 7570) of Part 2 [which governs voluntary declarations of parentage] or in any of the following subdivisions: [¶] . . . [¶] (d) The presumed parent receives the child into their home and openly holds out the child as their natural child." "Biological fatherhood does not, in and of itself, qualify a man for presumed father status under section 7611. On the contrary, presumed father status is based on the familial relationship between the man and child, rather than any biological connection." (*In re J.L.* (2008) 159 Cal.App.4th 1010, 1018, superseded by statute on other grounds, as stated in *In re Alexander P.* (2016) 4 Cal.App.5th 475, 486.) " '[T]he core issues are the person's established relationship with and demonstrated commitment to the child.' [Citation.] 'Presumed parent status is afforded only to a person with a fully developed parental relationship with the child . . . .' " (*In re L.L.* (2017) 13 Cal.App.5th 1302, 1310 (*L.L.*); see *Jerry P.*, *supra*, 95

8

Cal.App.4th at pp. 801-802, fn. omitted ["Presumed fatherhood, for purposes of dependency proceedings, denotes one who 'promptly comes forward and demonstrates a full commitment to his paternal responsibilities—emotional, financial, and otherwise.' "].)

Not all presumptions of parentage result in presumed parent status. Rather, when multiple individuals claim presumptions under section 7611, section 7612 addresses how those claims must be resolved. Prior to 2013, section 7612 only provided for recognition of one presumed father. (*Kevin Q. v. Lauren W.* (2009) 175 Cal.App.4th 1119, 1131 (*Kevin Q.*).) [" 'Although more than one individual may fulfill the statutory criteria that give rise to a presumption of paternity, "there can be only one presumed father." ' "].) As a result, former section 7612 provided various mechanisms for assessing which presumption would have priority and give rise to a presumed father. Section 7612, former subdivision (a), provided, " 'Except as provided in . . . Chapter 3 (commencing with Section 7570) [(voluntary declaration of paternity)] of Part 2 . . . , a presumption under Section 7611 is a rebuttable presumption affecting the burden of proof and may be rebutted in an appropriate action only by clear and convincing evidence.' " (*Kevin Q.*, at p. 1133, fn. omitted.) Former subdivision (b) further stated: " 'If two or more presumptions arise under Section . . . 7611 that conflict with each other, . . . the presumption which on the facts is founded on the weightier considerations of policy and logic controls.' " (*Kevin Q.*, at p. 1133.) Former subdivision (c) of section 7612 provided that presumptions under section 7611 were rebutted by a judgment establishing paternity of the child by another man. (*Kevin Q.*, at p. 1133.)

9

In 2013, the Legislature amended section 7612 to allow for the recognition of multiple presumed parents.  (Stats. 2013, ch. 564, § 6.)  While subdivisions (a) and (b) remained unchanged, a new subdivision (c) provides:  "In an appropriate action, a court may find that more than two persons with a claim to parentage under this division are parents if the court finds that recognizing only two parents would be detrimental to the child."  (§ 7612, subd. (c).)

2. *Voluntary Declaration of Parentage*

Pursuant to section 7570, the Legislature declared, "There is a compelling state interest in establishing parentage for all children.  Establishing parentage is the first step toward a child support award, which, in turn, provides children with equal rights and access to benefits, . . ."  (§ 7570, subd. (a)(1).)  Upon the event of a live birth, a hospital is required to "provide to the woman giving birth and shall attempt to provide, at the place of birth, to the person identified by the woman giving birth as . . . the only possible genetic parent other than the woman who gave birth . . . a voluntary declaration of parentage . . . .  Staff in the hospital shall witness the signatures of parents signing a voluntary declaration of parentage and shall forward the signed declaration to the Department of Child Support Services within 20 days of the date the declaration was signed."  (§ 7571, subd. (a).)  A voluntary declaration of parentage establishes the parentage of a child and "takes effect on the filing of the document with the Department of Child Support Services."  (§ 7573, subd. (c).)  "[A] completed voluntary declaration of parentage . . . that has been filed with the Department of Child Support Services is

10

equivalent to a judgment of parentage of the child and confers on the declarant all rights and duties of a parent." (§ 7573, subd. (d).)

3. *Standard of Review*

"On appeal, we independently interpret statutes and apply the substantial evidence standard in reviewing a juvenile court's finding whether a person is a presumed parent. [Citations.] In so doing, we consider the evidence and all reasonable inferences therefrom in favor of the court's finding and do not reweigh the evidence or credibility of witnesses." (*L.L.*, *supra*, 13 Cal.App.5th at p. 1310.)

B. *Father is Not Entitled to Presumed Father Status as a Matter of Law Solely Because He Executed a Voluntary Declaration of Parentage*

Father claims the fact that he executed a voluntary declaration of parentage (VDOP) at the hospital when the child was born automatically established that he was the child's presumed father. At the outset, we note respondent's argument that there was no evidence presented that father signed a VDOP. Father contends that we should infer he signed a VDOP since he is listed on the child's birth certificate. (Health & Saf. Code, § 102425, subd. (a)(4)(C).) However, we observe that the record does not contain a copy of the child's birth certificate *or* the VDOP. Even assuming father did properly sign and file a VDOP, we conclude that a VDOP does not confer presumed father status.

Section 7611 states that an individual "is presumed to be the *natural parent* of a child if the person meets the conditions provided in . . . Chapter 3 (commencing with Section 7570) of Part 2"—i.e., executed a valid VDOP. (§ 7611, italics added.) This language is clear and unambiguous. Thus, under the express language of section 7611,

11

father is presumed to be the natural father of the child.  Moreover, this presumption is not rebuttable.  Section 7612, subdivision (a), sets forth the standard for rebutting presumptions arising under section 7611.  That subdivision, however, expressly exempts from its language presumptions arising from VDOP's.  (§ 7612, subd. (a) ["Except as provided in . . . Chapter 3 (commencing with Section 7570) of Part 2, . . ."].)

While the VDOP gives father a conclusive presumption of parentage, we disagree that it mandates his designation as a presumed parent.  There is a line of cases holding that the signing of a VDOP by itself is insufficient to confer presumed parent status in a dependency case.  A VDOP "gives rise to an evidentiary presumption that the declarant is the child's *biological father*, [but] it does not entitle him to *presumed father* status."  (*In re Jovanni B.* (2013) 221 Cal.App.4th 1482, 1492 (*Jovanni B.*); see *In re Brianna M.* (2013) 220 Cal.App.4th 1025, 1048 (*Brianna M.*)[4].)  In *In re E.O.* (2010) 182 Cal.App.4th 722 (*E.O.*), N.M. argued he was entitled to presumed father status in a dependency proceeding because a judgment entered in a separate action had found him to be the father of the dependent children and ordered him to pay child support.  He noted that section 7636 provides that a " 'judgment . . . of the court determining the existence

---

[4]  The California Supreme Court granted review of *Brianna M.* and subsequently dismissed the appeal due to the petitioner's failure to file an opening brief.  (*In re Brianna M.* (2014) 317 P.3d 1182; *In re Brianna M.* (2014) 330 P.3d 327.)  Pursuant to California Rules of Court, rule 8.1115(e)(2), "After decision on review by the Supreme Court, unless otherwise ordered by the Supreme Court under (3), a published opinion of a Court of Appeal in the matter . . . is citable and has binding or precedential effect, except to the extent it is inconsistent with the decision of the Supreme Court or is disapproved by that court." Accordingly, *Brianna M.* is citable since the petition for review was dismissed.

. . . of the parent and child relationship is determinative for all purposes.' " (*E.O.*, at p. 727.) He then claimed the paternity judgment " 'required the juvenile court to consider [him] the children's presumed father.' " (*Ibid.*) The court disagreed, stating "case law holds that in order to become a presumed father, a man 'must' fall within one of the categories set forth in Family Code section 7611." (*Ibid.*)

The *E.O.* court further explained as follows: "[A]ppellant's argument on this point misconstrues the nature of the prior judgment. A paternity judgment is, as the name implies, a judicial determination that a parent-child relationship exists. It is designed primarily to settle questions of biology and provides the foundation for an order that the father provide financial support. . . . Presumed father status, by contrast, is concerned with a different issue: whether a man has promptly come forward and demonstrated his ' "full commitment to his parental responsibilities—emotional, financial, and otherwise." ' [Citation.] We would endorse 'an interpretation that would lead to absurd consequences' if we were to conclude that a paternity judgment that is focused narrowly on biological and financial issues is determinative on subsequent issues that are unrelated to and far beyond its scope." (*E.O.*, *supra*, 182 Cal.App.4th at pp. 727-728.)

In *Brianna M.*, *supra*, 220 Cal.App.4th 1025, the court specifically addressed the issue of whether a VDOP entitles a man to presumed father status in a dependency proceeding. Applying the analysis of *E.O.*, the court concluded that "while executing a voluntary declaration of paternity entitles a man to be presumed a child's biological father, it does *not* entitle him to presumed father status in a dependency proceeding." (*Id.* at p. 1048.) The court explained as follows: "Like a paternity judgment, a voluntary

13

declaration of paternity is 'designed primarily to settle questions of biology.' " (*Ibid*.) The *Brianna M.* court further concluded that "there is no suggestion in the dependency statutes that the Legislature intended to grant preferred status in a dependency action to a man who has completed a voluntary declaration of paternity, but has not otherwise established a relationship with his child." (*Brianna M.*, at p. 1049.)

Relying on *Brianna M.*, and *E.O.*, the court in *Jovanni B.*, also held that a VDOP does not entitle a man to presumed father status in a dependency proceeding. (*Jovanni B.*, *supra*, 221 Cal.App.4th at pp. 1491-1494.) As the court in *Jovanni B.* reiterated, presumed father status is concerned with the issue of whether a man has promptly come forward and demonstrated his commitment to his parental responsibilities. (*Id*. at p. 1492.)

We fully agree with the rulings and rationales set forth in *E.O.*, *Brianna M.*, and *Jovanni B.*, and conclude that father's VDOP did not entitle him to presumed father status. A determination otherwise would lead to the absurd result that a person who has had no contact and provided no support for his child for many years and who does not fit within the definition of a presumed father set forth in section 7611 would undeservedly achieve the status of presumed father—the highest status for a father in a dependency proceeding—ordinarily " 'afforded only to a person with a fully developed parental relationship with the child.' " (*L.L.*, *supra*, 13 CalApp.5th at p. 1310.) We further note father has not argued, nor does the record show, that he has achieved presumed father status by promptly coming forward and demonstrating his commitment to his parental responsibilities.

14

C.  *The VDOP Did Not Rebut J.E.'s Presumed Father Status*

Father also contends that his claim of parentage based on the VDOP "automatically rebut[s]" J.E.'s presumed father status under section 7611.  It is undisputed that J.E. was entitled to presumed father status under section 7611, subdivision (d), since he "receive[d] the child into [his] home and openly [held] out the child as [his] natural child."  Father appears to contend that, pursuant to sections 7573 and 7612, subdivision (d), his VDOP extinguished J.E.'s presumed father status.  As a result, there are not two conflicting presumptions subject to the weighing process under section 7612, subdivision (b).  We disagree.

Section 7612, subdivision (d), provides:  "Unless a court orders otherwise after making the determination specified in subdivision (c), a presumption under Section 7611 is rebutted by a judgment establishing parentage of the child by another person."  Section 7573 provides that a completed VDOP "is equivalent to a judgment of parentage of the child . . . ."  (§ 7573, subd. (d).)  We agree that, by the plain language of section 7612, subdivision (d), father's VDOP "rebuts" the presumption of paternity under section 7611.  As we have said, the presumption created by section 7611 is that a man is the natural father of a child.  (§ 7611.)  Thus, under these statutes, father's VDOP "rebuts the evidentiary presumption of section 7611[, subdivision] (d)," that J.E. is the child's natural father.  (*Brianna M.*, *supra*, 220 Cal.App.4th at pp. 1049-1050.)  "But as such, it is irrelevant to these proceedings, because [father's] biological relationship with [the child] has never been at issue."  (*Ibid.*)

We do not agree, however, that the VDOP has the effect of extinguishing J.E.'s presumed father status for purposes of this dependency proceeding. (*Brianna M.*, *supra*, 220 Cal.App.4th at p. 1050.) "The primary purpose of section 7611, a part of the Uniform Parentage Act, is to establish a child's paternity through a series of rebuttable presumptions. In dependency proceedings, however, the purpose of section 7611 is not to establish paternity. Rather, as discussed above, the purpose is to determine whether the alleged father has demonstrated a sufficient commitment to his parental responsibilities to be afforded rights *not* afforded to natural fathers—the rights to reunification services and custody of the child. Therefore, in dependency proceedings the term 'presumed father' does not denote a presumption of fatherhood in the evidentiary sense and *presumed father status is not rebutted by evidence someone else is the natural father*." (*Jerry P.*, *supra*, 95 Cal.App.4th at p. 804, fn. omitted, italics added; see *Brianna M.*, *supra*, 220 Cal.App.4th at p. 1050.) In other words, "[s]ince a paternity judgment is a judicial determination of only biological paternity—and because biological paternity is irrelevant to presumed father status in the dependency context—a judgment establishing biological paternity in one man cannot overcome a court's finding of substantive presumed father status in another man." (*Brianna M.*, *supra*, 220 Cal.App.4th at p. 1050.)

16

Father relies on *Kevin Q.*, *supra*, 175 Cal.App.4th 1119 and *In re Levi H.* (2011) 197 Cal.App.4th 1279 (*Levi H.*),[5] in support of his claim that his VDOP rebuts J.E.'s presumed father status. However, neither case is applicable. Both cases were decided prior to the 2013 amendment to section 7612, which allows courts to recognize more than two presumed parents. As a result, the courts deciding *Kevin Q.* and *Levi H.* were required to select a single presumed parent.[6] (*Kevin Q.*, *supra*, 175 Cal.App.4th at p. 1131 ["How the various Family Code sections are reconciled and prioritized to identify a single presumed father is the subject of our inquiry here."]; *Levi H.*, *supra*, 197 Cal.App.4th at p. 1287 [" ' "[T]here can be only one presumed father." ' "].)

Moreover, former subdivision (c) of section 7612, in effect at the time of both decisions, stated, "The presumption under Section 7611 is rebutted by a judgment establishing paternity of the child by another man." (Legis. Counsel's Digest, Assem. Bill No. 1349 (2011-2012 Reg. Sess.) § 3.) Accordingly, former subdivision (c) required courts to find that a VDOP rebutted any section 7611 presumptions when evaluating two potential presumed parents. With the other presumptions rebutted, only the presumption arising from the VDOP remained, and there were no conflicting presumptions to weigh

---

[5] Overruled in part on other grounds, as stated in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, footnote 7.

[6] At oral argument, father's counsel suggested that, since we are rejecting the reasoning of *Kevin Q.* and *Levi H.* because they were decided prior to the 2013 amendment to section 7612, we should also reject *E.O.*, *Brianna M.*, and *Jovanni B.*, since they were also decided prior to the 2013 amendment. However, we cite to and agree with the analyses of *E.O.*, *Brianna M.*, and *Jovanni B.* in concluding that a man's VDOP does not entitle him to presumed father status. These cases are still applicable here and not affected by the 2013 amendment.

under section 7612, subdivision (b). (*Kevin Q.*, *supra*, 175 Cal.App.4th at p. 1139 ["Brent signed and filed a valid declaration of paternity that has the force of a judgment under section 7573 and trumps Kevin's presumption under section 7611, subdivision (d)."]; *Levi H.*, *supra*, 197 Cal.App.4th at p. 1290 [[B]ecause the voluntary declaration of paternity "*extinguishes*" the other presumption, "there are not two conflicting presumptions subject to the weighing process."].)

However, since those cases were decided, the Legislature amended the relevant statutory provisions. As discussed in part I.A.1., *ante*, section 7612 was amended to authorize courts to recognize more than two parents. (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 274 (2013-2014 Reg. Sess.) Apr. 29, 2013.) In doing so, former subdivision (c) was relettered as subdivision (d) and amended to provide, "*Unless a court orders otherwise* after making the determination specified in subdivision (c), a presumption under Section 7611 is rebutted by a judgment establishing parentage of the child by another person." (§ 7612, subd. (d), italics added; see Sen. Com. on Judiciary, Rep. on Sen. Bill. No. 274, *supra*, at p. 6.) In other words, a VDOP no longer automatically rebuts other presumptions of parentage under section 7611, as father claims, since a court may order otherwise.

We further note that *Kevin Q.* was a paternity action, not a dependency proceeding. "The question before the court, therefore, was which man, Brent or Kevin, was the child's biological father. [As such, t]he case has no bearing on the question before us—i.e., which man is entitled to presumed father status in this dependency

18

proceeding, *not* who is [the child's] biological father." (*Brianna M.*, *supra*, 220 Cal.App.4th at p. 1054; see *Kevin Q.*, *supra*, 175 Cal.App.4th at pp. 1137-1139.)

II. The Court Properly Applied the Statutes and Found That J.E. Was the Presumed Father and Father Was a Biological Father

Father further contends the court misapplied the statutes when evaluating his parentage claim, and he was consequently not offered reunification services. He argues the court did not find that it would be detrimental to the child to have only two parents under section 7612, subdivision (c); thus, because his parentage established through the VDOP rebutted J.E.'s presumed father status, and the court found it would not be detrimental for the child to have only two parents, the court erred in applying the balancing test under section 7612, subdivision (b), and "balancing him out" to be a biological father. He now asks us to remand the matter for the court to properly apply the statutory framework and offer him services. We conclude the court properly applied the statutes and found that J.E. was the child's presumed father and father was a mere biological father. Therefore, father was not entitled to reunification services.

A. *Background*

After counsels' arguments, the court found father to be a presumed father because "he signed the birth certificate at the hospital" and lived with the child. It also found J.E. to be a presumed father based on his established parental relationship with the child under section 7611, subdivision (d). Finding both fathers to be presumed fathers, the court stated: "[L]et me start with would it be detrimental to the child to not have two presumed fathers? And I don't find any evidence of detriment." It proceeded to find that father had

19

no current relationship with the child, noting that father had not seen him since he was a toddler. The court then contrasted father's relationship (or lack thereof) with the child's relationship with J.E. and found that the child was secure in his relationship with J.E. and in his relationships with his half siblings, noting that the child had been in J.E.'s care. The court stated: "[S]o I don't find that there's any proof of detriment if there is not two presumed fathers and I find the weightier balance is then with [J.E., since that is] the paternal relationship that the child has." The court stated that the child clearly looked to J.E. to meet his needs, and the child had been in his care since he was a toddler. As such, the court declared it was going to "balance out" father to be a biological father. The court also found it was not in the child's best interest to offer father services.

B. *Section 7612, Subdivision (c)*

As previously discussed, "[i]n 2013, the Legislature enacted section 7612, subdivision (c) to allow courts to recognize that a child has more than two parents in certain limited contexts." (*In re Donovan L.* (2016) 244 Cal.App.4th 1075, 1086-1087.) Section 7612, subdivision (c), provides: "*In an appropriate action*, a court may find that more than two persons with a claim to parentage under this division are parents *if the court finds that recognizing only two parents would be detrimental to the child*." "In enacting section 7612, subdivision (c), the Legislature expressed its intent that it 'only apply in the *rare case* where a child truly has more than two parents, and a finding that a child has more than two parents is necessary to protect the child from the detriment of being separated from one of his or her parents.' " (*L.L.*, *supra*, 13 Cal.App.5th at p. 1316, italics added.)

20

In *Donovan L.*, *supra*, 244 Cal.App.4th 1075, the court examined the legislative history of section 7612, subdivision (c), and harmonized it with the UPA, concluding: "There is no indication the Legislature intended section 7612, subdivision (c) to apply to a person . . . who, at the time of the contested disposition hearing on parentage, lacked an existing relationship with the child. A person who lacks an existing parent-child relationship is not a child's 'parent in every way.' [Citation.] Nor would separation from such a person cause 'devastating psychological and emotional impact on the child.' " (*Donovan L.*, at pp. 1092-1093.) The court further concluded: " '[A]n appropriate action' for application of section 7612, subdivision (c) is one in which there is an *existing* parent-child relationship between the child and the putative third parent, such that 'recognizing only two parents would be detrimental to the child.' [Citation.]" (*Id.* at pp. 1093-1094.) In that case, the court found the putative third parent " 'does not have a strong relationship,' " with the child. (*Id.* at p. 1092.) Because the court found the putative third parent did not have an existing parent-child relationship, it concluded there was no substantial evidence to support a finding of detriment under section 7612, subdivision (c). (*Donovan L.*, at p. 1094; see *L.L.*, *supra*, 13 Cal.App.5th at p. 1316.)

C. *Section 7612, Subdivision (b) Weighing Process*

"If a third parent is not recognized under section 7612, subdivision (c), then a juvenile court generally must weigh the competing presumptions of two or more presumed fathers and determine which one should be recognized as the child's presumed father. [Citations.] Section 7612, subdivision (b), provides: 'If two or more presumptions arise under Section 7610 or 7611 that conflict with each other, or if a presumption under Section 7611 conflicts with a claim pursuant to Section 7610, the presumption which on the facts is founded on the weightier considerations of policy and logic controls.' Accordingly, where there are conflicting claims of two or more presumed fathers, the juvenile court must make factual findings as to each claim and then determine which claim is entitled to greater weight under section 7612, subdivision (b)." (*L.L.*, *supra*, 13 Cal.App.5th at pp. 1317-1318; see § 7612, subd. (b).)

D. *The Court Properly Recognized J.E. as the Child's Presumed Father*

Father specifically contends the court found "that there would be no detriment to have *only two parents*. Thus, the court did not make the determination of detriment under subdivision (c)." He proceeds to conclude that, because the court did not make the detriment finding under subdivision (c), only the latter part of section 7612, subdivision (d), applies. Subdivision (d) states, "Unless a court orders otherwise after making the determination specified in subdivision (c), a presumption under Section 7611 is rebutted by a judgment establishing parentage of the child by another person." Thus, father claims that, because the court "resolved subdivision (c) in the negative," the "controlling provision" in section 7612, subdivision (d), was the portion stating that "a presumption

22

under Section 7611 is rebutted by a judgment establishing parentage of the child by another person." He further claims that, where that clause is operative, "any additional balancing is improper." In other words, he argues the court erred in not applying the "controlling provision" and instead applying the weighing process of section 7612, subdivision (b), and electing to "balance [him out] to a biological father." We disagree.

The court here apparently concluded that this was not an appropriate action to find that recognizing only two parents would be detrimental to the child. (§ 7612, subd. (c).) " '[A]n appropriate action' for application of section 7612, subdivision (c) is one in which there is an *existing* parent-child relationship between the child and the putative third parent, such that 'recognizing only two parents would be detrimental to the child.' " (*Donovan L.*, *supra*, 244 Cal.App.4th at pp. 1093-1094.) The court here stated, "I don't find that there's any proof of detriment if there is not two presumed fathers and I find the weightier balance then is with [J.E. since] that [is] the paternal relationship that the child has." In other words, the court did not find that this was "the 'rare case' in which section 7612, subdivision (c) allows a court to find that a child has more than two parents." (*Id.* at p. 1094.) It expressly found that father did not have a current relationship with the child, noting that he had not seen the child since the child was a toddler. Indeed, at the jurisdiction/disposition hearing, father admitted he had not seen the child since 2013 and had not provided him any emotional or financial support. Thus, at the time of the hearing, father had not had a relationship with the child for at least eight years. Since there was no existing relationship between father and the child, the court did not need to

recognize three parents. Accordingly, there was no substantial evidence to support a finding of detriment under the statute. (*Donovan L.*, at pp. 1092-1093.)

Because the court did not recognize a third parent under section 7612, subdivision (c), it properly went on to "weigh the competing presumptions of two or more presumed fathers and determine which one should be recognized as the child's presumed father." (*L.L.*, *supra*, 13 Cal.App.5th at p. 1317; see § 7612, subd. (b).) As mentioned *ante*, the court found that both father and J.E. were presumed fathers. Assuming without deciding that the court properly found father to be a presumed father, we conclude that it weighed the competing presumptions and properly determined that J.E. should be recognized as the child's presumed father. Father had no relationship with the child, while J.E. had raised the child as his own since the child was two years old, loved him as his own, and provided for him both emotionally and financially.

Ultimately, the court properly applied the relevant statutes and found that J.E. was the child's presumed father, and that father was merely a biological father. Consequently, the court did not err in denying father reunification services. (*In re Zacharia D.* (1993) 6 Cal.4th 435, 451 ["[O]nly a presumed, not a mere biological, father is a 'parent' entitled to receive reunification services."].)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
                                                              J.

We concur:

McKINSTER _____
          Acting P. J.

MENETREZ _____
              J.

25